IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL GAREY, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| BOROUGH OF QUAKERTOWN, et al., | : | No. 12-799 |
| | : | |
| Defendants. | : | |

**MEMORANDUM RE: DEFENDANTS' MOTION TO DISMISS**

**Baylson, J.**                                                                                       **August 20, 2012**

Plaintiff Michael Garey commenced this civil rights action by filing a Complaint against Defendants the Borough of Quakertown and Officers Kris Baccari and Christopher Grill, individually and in their capacities as Borough of Quakertown police officers. Presently before the Court is Defendants' Motion to Dismiss the Complaint (ECF No. 5) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, Defendants' Motion to Dismiss is DENIED.

**I.      Factual and Procedural Background**

The following facts are drawn from the Complaint. On or around February 16 or 17, 2010, Plaintiff was arrested by Richland Township police. (Cplt. ¶ 2.) Plaintiff was searched, handcuffed, and placed in the back of a Richland Township patrol vehicle. (Id.) Subsequently, Plaintiff was pulled out of the vehicle and searched again, at which point Officers Baccari and/or

1

Grill stunned him with a Taser,[1] allegedly without provocation.  (Id.)  Plaintiff was tased a second time, again allegedly without provocation.  (Id. ¶ 18.)  Plaintiff was then placed back in the Richland Township patrol vehicle.  (Id. ¶ 19.)

During the course of these events, a Pennsylvania State Police patrol vehicle was parked behind the Richland Township patrol vehicle in which Plaintiff was detained.  (Id. ¶ 17.)  Officers Baccari and Grill were unaware that the State Police patrol vehicle was equipped with a dash camera and that it recorded the events which took place.  (Id.)

Defendants claim that Plaintiff was tased because he attempted to smash the windows of the Richland Township patrol vehicle with his feet and head and open the car door and the plastic partition inside the vehicle.  (Id. ¶ 16.)  Defendants further claim that Plaintiff was belligerent and kicked an officer.  (Id.)

According to the Complaint, the video captured by the State Police patrol vehicle shows that Plaintiff's first tasing was unprovoked and that Defendants fabricated their version of events to justify tasing Plaintiff.  (Id. ¶ 18.)  Plaintiff was in custody of the Richland Township police, handcuffed, and in the back of a police vehicle immediately prior to being tased.  (Id. ¶ 21.)  At the time, Plaintiff allegedly posed no threat to the police and did not attempt to fight or injure the officers or anyone else.  (Id. ¶ 22.)  The video did not capture the second tasing.  (Id. ¶ 18.)

The Complaint alleges that the Borough of Quakertown failed to properly train Officers Baccari and Grill in how to properly place a prisoner in custody in a police car without resorting

---

[1]Taser, or TASER, is the brand name of an electroshock weapon commonly used by law enforcement.  Courts abbreviate and use the name as a verb.  See, e.g., Reiff v. Marks, No. 08-cv-5963, 2011 WL 666139, at *2 n.23 (E.D. Pa. Feb. 23, 2011) (collecting cases).  Accordingly, this Court will adopt the verb "tase" to refer to the act of stunning an individual with a Taser.

to use of a Taser when that suspect is already handcuffed, in a police car, and poses no physical threat.  (Id. ¶ 26.)  The Complaint further alleges that officers in the Borough of Quakertown have a history of verbal and physical abuse and police brutality toward citizens in circumstances similar to those here.  (Id. ¶ 27.)  Additionally, the Complaint alleges that the Borough of Quakertown had, prior to the date of the incident involving Plaintiff, permitted, tolerated, and negligently overlooked the inappropriate use of Tasers by its officers and failed to train them in the proper use of Tasers on arrestees.  (Id. ¶ 29.)

On February 14, 2012, Plaintiff commenced the instant action.  In his Complaint, Plaintiff asserts a federal civil rights claim for excessive force in violation of the Fourth Amendment of the United States Constitution, pursuant to 42 U.S.C. § 1983 (Count I), as well as state law claims for assault and battery (Count II) and intentional infliction of emotional distress (Count III), against Officers Baccari and Grill.  Plaintiff also asserts a civil rights claim pursuant to Monell v. New York City Department of Social Services, 436 U.S. 658 (1978) (Count IV), against the Borough of Quakertown.  Plaintiff seeks the following relief:  compensatory and punitive damages against Officers Baccari and Grill; compensatory damages against the Borough of Quakertown; reasonable attorney's fees and costs; and any other relief that the Court deems appropriate.

On April 16, 2012, Defendants filed a Motion to Dismiss Plaintiff's Complaint (ECF No. 5) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  On May 8, 2012, Plaintiff filed a Response in Opposition thereto (ECF No. 6).  Defendants did not file a Reply.

## II. Legal Standards

### A. Jurisdiction

This Court has original jurisdiction over Plaintiff's federal law claims pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

### B. Standard of Review

A claim may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A valid complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Generally, a district court may consider only facts alleged in the complaint and its attachments on a motion to dismiss. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir.1994). The court may also take into consideration a "document integral to or explicitly relied upon in the complaint." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis in original).

The Third Circuit has held that a district court must conduct a two-part analysis to determine whether a claim survives a motion to dismiss. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). First, the court must distinguish between the factual and legal elements of the claim. Id. at 210–11. The court must accept as true the plaintiff's well-pled allegations and construe the complaint in the light most favorable to the plaintiff, Common Cause of Pa. v. Pennsylvania, 558 F.3d 249, 253 (3d Cir.2009) (citing Lewis v. Atlas Van Lines, Inc., 542 F.3d 403, 405 (3d Cir.2008)), but not "threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements," Fowler, 578 F.3d at 210 (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)).  Second, the court must inquire whether the complaint states a plausible claim to relief.  Id. at 211 (citing Iqbal, 129 S. Ct. at 1950).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1950 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).

**III.     Discussion**

Defendants move to dismiss Plaintiff's claims on several grounds.  The Court will address each of their contentions in turn.

**A.     Qualified Immunity**

First, Defendants contend that Officers Baccari and Grill are entitled to qualified immunity from suit.  Specifically, Defendants contend that no constitutional right was violated during Plaintiff's arrest, and even if it were, that right was not clearly established at the time of the arrest.  According to Defendants, the use of Tasers by Officers Baccari and/or Grill under the circumstances of this case was objectively reasonable.

Government officials are entitled to qualified immunity if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Thomas v. Independence Twp., 463 F.3d 285, 291 (3d Cir. 2006) (quoting Behrens v. Pelletier, 516 U.S. 299, 305 (1996) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982))).  Qualified immunity serves to protect police officers from suits based on mistaken judgment, protecting "all but the plainly incompetent or those who knowingly violate the law." Hunter v. Bryant, 502 U.S. 224, 229 (1991) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

Qualified immunity is "an <u>immunity from suit</u> rather than a mere defense to liability." <u>Keystone Redev. Partners, LLC v. Decker</u>, 631 F.3d 89, 101 (3d Cir. 2011) (quoting <u>Mitchell v. Forsyth</u>, 4276 U.S. 511, 526 (1985) (emphasis in original)).  Accordingly, qualified immunity should be decided "at the earliest possible stage in litigation." <u>Pearson v. Callahan</u>, 555 U.S. 223, 232 (2009) (quoting <u>Hunter</u>, 502 U.S. at 227).  However, the Third Circuit has warned that "it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases." <u>Newland v. Reehorst</u>, 328 F. App'x 788, 791 n.3 (3d Cir. 2009).  A defendant has the burden of pleading qualified immunity.  <u>Thomas</u>, 463 F.3d at 293-94.

The Supreme Court has outlined a two-step process for determining whether a defendant is entitled to qualified immunity.  First, a court must analyze whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right." <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001).  Second, if the allegations support a violation of a constitutional right, the court must "ask whether the right was clearly established." <u>Id.</u>  It is not sufficient for the right to be established in a general sense at the time the incident occurred, rather "[t]he contours of the right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right." <u>Schneyder v. Smith</u>, 653 F.3d 313, 329 (3d Cir. 2011) (quoting <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987)).  The central inquiry under the second prong is whether it would have been clear to a reasonable officer that his actions were unlawful under the circumstances.  <u>Saucier</u>, 553 U.S. at 202.  The court need not address the qualified immunity prongs in any particular order.  <u>Pearson</u>, 555 U.S. at 236.

Where an alleged use of excessive force occurs in the context of an arrest, the claim "is properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." Curley v. Klem, 499 F.3d 199, 206 (3d Cir. 2007) (quoting Graham v. Connor, 490 U.S. 386, 388 (1989)). "[T]o state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable." Estate of Smith v. Marasco, 430 F.3d 140, 148 (3d Cir. 2005) (quoting Estate of Smith v. Marasco, 318 F.3d 497, 515 (3d Cir. 2003) (quoting Abraham v. Raso, 183 F.3d 279, 288 (3d Cir. 1999))). Here, it is undisputed that a seizure occurred. Thus, the only question for purposes of determining whether the Complaint states a violation of a constitutional right is whether the seizure was unreasonable.

An excessive force claim must be evaluated "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Kopec v. Tate, 361 F.3d 772, 777 (3d Cir. 2004) (quoting Graham, 490 U.S. at 396). Central to the "calculus of reasonableness" is the fact that police officers often must make split-second decisions about the degree of force necessary in a given situation. Id. (quoting Graham, 490 U.S. at 396-7).[2] "[I]f the use of force is 'objectively reasonable', an officer's good faith is irrelevant and any bad faith motivation on his part is immaterial." Id. at 776.

---

[2]Among the factors to consider in determining the objective reasonableness of an officer's actions are: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he actively is resisting arrest or attempting to evade arrest by flight." Kopec v. Tate, 361 F.3d 772, 777 (3d Cir. 2004) (citing Graham v. Connor, 490 U.S. 386, 396 (1989)). Further factors include: whether "the persons subject to the police action are violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." Id. (citing Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997)).

7

The proper test for determining whether an application of force is excessive requires "careful attention to the facts and circumstances of each particular case[.]" Curley, 499 F.3d at 207 (quoting Graham, 490 U.S. at 396). The Fourth Amendment test of reasonableness "is not capable of precise definition or mechanical application[.]" Id. at 211 (quoting Bell v. Wolfish, 441 U.S. 520, 599 (1979)).

At this juncture, Plaintiff has sufficiently alleged a violation of his constitutional right to be free from an unreasonable seizure under the Fourth Amendment – a right which is clearly established to the extent the law recognizes that it protects citizens from the use of excessive force in effectuating an arrest. The Complaint alleges that Plaintiff was tased without provocation when he had already been handcuffed and was inside a police vehicle. "[W]hile the use of a Taser in the course of an arrest may be a discretionary decision on the part of an individual officer that is dependent on the circumstances then and there being presented, a reasonable law enforcement officer should know that excessive uses of Taser stuns to effectuate an arrest would constitute a Fourth Amendment violation." Gorman v. Warwick Twp., No. 10-cv-6760, 2011 WL 1235198, at *9 (E.D. Pa. Apr. 1, 2011) (Joyner, C.J.).

Taking the Complaint's allegations as true, and in the absence of a clear record of what actually occurred in the course of Plaintiff's arrest, the Court must deny the request for dismissal on the basis of qualified immunity at this time. However, Defendants are nevertheless free to assert that Officers Baccari and Grill are entitled to qualified immunity at summary judgment or at trial should they so choose.

    **B.**    **State Law Claims**

Next, Defendants contend that Plaintiff's state law claims for assault and battery and

8

intentional infliction of emotional distress should be dismissed because the amount of force used by Officers Baccari and Grill to effectuate an arrest was objectively reasonable.

Under Pennsylvania law, "[a]ssault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." Verdier v. Borough, 796 F. Supp. 2d 606, 631 (E.D. Pa. 2011) (quoting Renk v. City of Pitt., 641 A.2d 289, 293 (Pa. 1994) (quoting Cohen v. Lit Bros., 70 A.2d 419, 421 (Pa. Super. Ct. 1950) (quoting Butler v. Stockdale, 19 Pa. Super. 98, 107 (Pa. Super. Ct. 1901)))). "In making a lawful arrest, a police officer may use such force as is necessary under the circumstances to effectuate the arrest." Russoli v. Salisbury Twp., 126 F. Supp. 2d 821, 870 (E.D. Pa. 2000) (quoting Renk, 641 A.2d at 293). "The reasonableness of the force determines whether the police officer's conduct constitutes an assault and battery." Id. (citing Renk, 641 A.2d at 293)." Accordingly, "[a] claim brought under Pennsylvania law for excessive force by a police officer is a claim for assault and battery." Id.

As discussed above, Plaintiff has adequately stated a claim for excessive force. Therefore, Plaintiff has also adequately stated a claim for assault and battery.

To maintain a claim for intentional infliction of emotional distress under Pennsylvania law, a "plaintiff must prove that the defendant, by extreme and outrageous conduct, intentionally or recklessly caused the plaintiff severe emotional distress." Bell v. Twp. of Concord, 759 F. Supp. 2d 621, 631 (E.D. Pa. 2011) (quoting Britt v. Chestnut Hill College, 632 A.2d 557, 559 n.2 (Pa. Super. Ct. 1993) (quoting Motheral v. Burkhart, 583 A.2d 1180, 1188 (Pa. Super. Ct.

1990))).³  "[A] plaintiff must suffer some type of resulting physical harm due to the defendant's outrageous conduct." Reedy v. Evanson, 615 F.3d 197, 231 (3d Cir. 2010) (quoting Swisher v. Pitz, 868 A.2d 1228, 1230 (Pa. Super. Ct. 2005) (quoting Fewell v. Besner, 664 A.2d 577, 582 (Pa. Super. Ct. 1995) (citing Kazatsky v. King David Mem'l Park, Inc., 527 A.2d 988, 995)))). "Liability on an intentional infliction of emotional distress claim 'has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Reedy, 615 F.3d at 231-2 (quoting Field v. Phila. Elec. Co., 565 A.2d 1170, 1184 (Pa. Super. Ct. 1989)).

Construed liberally and in favor of Plaintiff, the Complaint adequately states a claim for intentional infliction of emotional distress. The use of Tasers by Officers Grill and Baccari after Plaintiff had already complied with the arrest and posed no threat to the officers or the public leads to an inference of sufficiently outrageous conduct to sustain a claim for intentional infliction of emotional distress at this stage of the litigation.

Accordingly, the Court will deny Defendants' request to dismiss Plaintiff's state law claims for assault and battery and intentional infliction of emotional distress.

### C.  Monell Claim

Further, Defendants contend that Plaintiff has failed to sufficiently plead that his constitutional rights were violated pursuant to a municipal policy or custom pursuant to Monell

---

³ While the Pennsylvania Supreme Court has not formally recognized a cause of action for intentional infliction of emotional distress, Reedy v. Evanson, 615 F.3d 197, 231 (3d Cir. 2010) (citing Taylor v. Albert Einstein Med. Ctr., 754 A.2d 650, 652 (Pa. 2000)), the Pennsylvania Superior Court has. Id. at 231 (citing Swisher v. Pitz, 868 A.2d 1228, 1230 (Pa. Super. Ct. 2005)).

v. New York City Department of Social Services, 436 U.S. 658 (1978).  Specifically, Defendants contend that Plaintiff has failed to allege any analogous prior violations of which the Borough Quakertown was aware or any analogous prior violations committed by Officers Baccari or Grill.

  The existence of a policy or custom can be established by (1) showing that a "decisionmaker possessing final authority to establish municipal policy with respect to the action issued an official statement of policy," or (2) by demonstrating that, though not specifically endorsed or authorized by law, the "practices of state officials [are] so permanent and well settled that they operate as law."  Jiminez v. All Am. Rathskellar, 503 F.3d 247, 250 (3d Cir. 2007) (internal quotation marks omitted).  "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983."  Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011).  Once a policy or custom is identified, a plaintiff must also establish that the municipality maintained the policy or custom with "deliberate indifference" to the purported constitutional deprivations.  Jiminez, 503 F.3d at 250.

  Here, the Complaint, taken as a whole and construed in the light most favorable to Plaintiff, can be fairly interpreted as alleging the existence of a municipal policy or custom.  The Complaint alleges that the Borough of Quakertown failed to properly train Officers Baccari and Grill in how to properly place a prisoner in custody in a police car without resorting to use of a Taser when that suspect is already handcuffed, in a police car, and poses no physical threat.  The Complaint also alleges that the officers in the Borough of Quakertown have a history of verbal and physical abuse and police brutality toward citizens in circumstances similar to those here.  Moreover, the Complaint alleges that the Borough of Quakertown had, prior to the date of the

incident involving Plaintiff, permitted, tolerated, and negligently overlooked the inappropriate use of Tasers by its officers and failed to train them in the proper use of Tasers on arrestees. Accordingly, the Court declines to dismiss Plaintiff's Monell claim for failure to plead the existence of an applicable policy or custom.

### D: Punitive Damages

Finally, Defendants contend that Plaintiff's claim for punitive damages against Officers Baccari and Grill fails as a matter of law because their alleged misconduct does not rise to the level of wanton or reckless behavior.

"[P]unitive damages may be awarded under 42 U.S.C. § 1983 'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" Coleman v. Kaye, 87 F.3d 1491, 1497 (3d Cir. 1996) (quoting Smith v. Wade, 461 U.S. 30, 56 (1983)). Plaintiff's allegations that Officers Baccari and/or Grill repeatedly tased him without justification after effectuating a proper arrest permits an inference that they acted with at least the requisite level of indifference to his federally protected rights to state a plausible claim for punitive damages at this stage of the litigation. Therefore, the Court will deny Defendants' motion to dismiss Plaintiff's punitive damages claim.

### IV. Conclusion

For the reasons set forth above, Defendant's Motion to Dismiss is DENIED. An appropriate order follows.

O:\CIVIL 12\12-799 Garey v. Borough of Quakertown\Memo re MTD.wpd