IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MICHAEL GAREY,**<br><br>                    **Plaintiff,**<br><br>            **v.**<br><br>**BOROUGH OF QUAKERTOWN, et al.,**<br><br>                    **Defendant.** | **CIVIL ACTION NO. 12-0799** |

**Baylson, J.**                                                                                           **July  1, 2013**

## MEMORANDUM RE: MOTION FOR SUMMARY JUDGMENT

Plaintiff Michael Garey commenced this civil rights action against the Borough of Quakertown and Officers Kris Baccari and Christopher Grill, individually and in their official capacities.  Presently before the Court is Defendants' Motion for Summary Judgment. (ECF No. 21).  For the reasons that follow, Defendants' Motion is DENIED.

### I.        Factual and Procedural Background

This case involves two alleged tasings of Plaintiff after he was arrested for attempted burglary and other crimes.  One of the tasings was committed by Officer Baccari and the other by Officer Grill.  While there is no dispute between the parties that the tasings occurred and that both were carried out after Plaintiff was arrested, the parties disagree as to whether the officers' use of force in effectuating the tasings was excessive.  As will be explained below, the Court

1

finds these disputes to be not only genuine, but material to the adjudication of Plaintiff's claim under Section 1983.

On the evening of February 16, 2010, a 9-1-1 call reported that a man with a handgun was attempting to break into a home located at 3004 Route 212, in Springfield, Pennsylvania. (Def. Statement of Undisputed Facts ¶ 72) (ECF 23).   The Pennsylvania State Police ("PSP") dispatched to investigate, and they radio'd for officers from the Quakertown and Richland Township Police Departments to assist because those officers would be more familiar with the roads in the area. (Id. ¶ 34). When the PSP arrived at the scene, at approximately midnight, they saw Plaintiff leaving the porch of the home and walking towards his vehicle.  (Def. Mot. for Summary Judgment, Ex. H at 6) (ECF 23).   After standing at his vehicle for a moment, Plaintiff fled on foot.  (Id.).

A pursuit ensued, and at roughly 12:30 a.m., Plaintiff was apprehended in the driveway of a social club located roughly one-quarter mile from the home.  (Def. Statement of Undisputed Facts ¶ 74).  The officers involved in Plaintiff's pursuit and apprehension were Officer Lawhead, of the Richland Township Police Department, and Officers Baccari and Grill, of the Quakertown Township Police Department. Officers Lawhead, Baccari and Grill submitted Plaintiff to a pat-down, placed him in handcuffs, and directed him to the backseat of a Quakertown police cruiser, parked on the side of a road near the social club. The officers did not find any weapons on Plaintiff's person or in the vicinity of the arrest.

It is undisputed that at this point, when Plaintiff was sitting in the back of the Quakertown police cruiser, he became argumentative.  (Pl. Response, Garey Dep., Ex. B at 57-59; Def. Statement of Undisputed Facts ¶ 46).   However, the parties dispute the degree of

Plaintiff's confrontational behavior.  According to Defendants, Plaintiff made threats to the officers' jobs, families, and lives, began banging his head against the partition in the vehicle. They also allege he attempted to kick out the rear windows of the vehicle.  (Def. Statement of Undisputed Facts ¶¶ 49-51, 96).  Plaintiff, on the other hand, admits he displayed agitation at being apprehended and asked the officers the reason for his arrest, but contends he never made threats of violence.  (Pl. Response, Garey Dep., Ex. B at 68-69). Plaintiff also contends he never banged his head against the partition or attempted to kick out windows.  (Id. at 58-59).

At approximately 1:00 a.m., a car of PSP troopers pulled up behind the Quakertown cruiser in which Plaintiff was sitting.  The PSP troopers state that upon arrival, they witnessed Plaintiff in the backseat, kicking, spitting, and head-butting. They also contend they saw him attempting to kick out the windows. (Def. Statement of Undisputed Facts ¶ 76).

Plaintiff was taken out of the cruiser and patted down by PSP Trooper Hibson.  (Pl. Response, Garey Dep., Ex. B at 56; Def. Statement of Undisputed Facts ¶ 90).  Plaintiff claims he was calm during Hibson's pat down, but Defendants claim he was acting belligerent and attempting to kick Hibson.  (Pl. Response, Garey Dep., Ex. B at 61; Def. Statement of Undisputed Facts ¶ 99).  Plaintiff claims the officers did not warn him of a potential tasing, but Defendants claim they told Plaintiff that if he did not cooperate, he would be tased. (Pl. Response, Garey Dep., Ex. B at 60-61; Def. Statement of Undisputed Facts ¶ 97). In any event, the parties agree that shortly after the pat-down, Plaintiff was tased in the right side of his lower back by Officer Baccari and then returned to the rear-seat of the cruiser. (Pl. Response, Garey Dep., Ex. B at 59; Def. Statement of Undisputed Facts ¶ 100).

The tasing – as well as the pat-down by Hibson – was captured on a video recording made by a dashboard camera located on the PSP police vehicle.  (Def. Statement of Undisputed Facts, Def. Ex. I).

The parties also agree Plaintiff was tased a second time after being returned to the Quakertown police cruiser, but they hotly dispute the essential facts pertaining to the second tasing.  (Pl. Response, Garey Dep., Ex. B at 62; Def. Statement of Undisputed Facts ¶ 112).  According to Defendants, the PSP left the scene when Plaintiff was returned to the vehicle and Officer Baccari then placed Plaintiff in double-cuffs, which loosened the distance between his hands. (Id. ¶¶ 93, 103).  At this point, Defendants claim Plaintiff became belligerent once again.  He maneuvered his hands in front of his body, began kicking and banging his head, and tried to manipulate the handle on the rear door. (Id. ¶ 107).  The officers removed Plaintiff from the cruiser and attempted to apply restraints to his legs, but he resisted, pushed away, and kicked in their direction.  (Id. ¶¶ 108, 110).   At this point, Officer Grill tased Plaintiff in the lower right back.  (Id. ¶ 112).  The officers secured him on the ground, applied ankle restraints, returned him to the cruiser, and transported him to the police station. (Id. ¶¶ 66, 113).

Plaintiff offers a different account of the second tasing.  He claims he was never taken out of the Quakertown cruiser a second time. (Pl. Response, Garey Dep., Ex. B at 14).  Rather, Plaintiff contends after being returned to the backseat following the first tasing,  the officers attempted to put ankle restraints on his legs. (Id. 62-63).  At this point, he was tased in his right leg by a Quakertown Police officer.  (Id. at 63-64).  In contrast to Defendants' account of the events in question, Plaintiff claims he was never put in double handcuffs and never attempted to manipulate his hands in front of his body.  (Id. at 66-67).

On March 10, 2010 a Criminal Complaint was filed against Plaintiff which included charges for criminal homicide, burglary, aggravated assault, criminal trespass, carrying of firearms without a license, terroristic threats, possessing instruments of a crime, resisting arrest, and criminal mischief.  (Def. Mot. for Summary Judgment, Ex. M).  On June 14, 2010, Plaintiff entered a Negotiated Plea on various charges, including the resisting arrest charge.  (Def. Statement of Undisputed Facts ¶ 27).

On February 14, 2012, Plaintiff commenced the instant action.  In his Complaint, Plaintiff asserts a federal civil rights claim for excessive force in violation of the Fourth Amendment, pursuant to 42 U.S.C. § 1983 (Count I), as well as state law claims for assault and battery (Count II). (ECF 1).[1]  Plaintiff seeks compensatory and punitive damages against Officers Baccari and Grill; reasonable attorney's fees and costs; and any other relief that the Court deems appropriate.

On April 16, 2012, Defendants filed a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6). (ECF No. 5). On May 8, 2012, Plaintiff filed a Response in Opposition. (ECF No. 6). Defendants did not file a Reply.  The Court denied Defendants' Motion by Order of August 20, 2012. (ECF No. 8).  On March 28, 2013, following discovery, Defendants filed a Motion for Summary Judgment. (ECF No. 21) Plaintiffs filed a Response in Opposition (ECF No. 26) and Defendants filed a Reply (ECF No. 28).

## II.    Standard of Review

A district court should grant a motion for summary judgment if the movant can show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

---

[1] The Plaintiff has withdrawn his claim alleging intentional infliction of emotional distress, as well as his Monell claim against the Borough of Quakertown. (Pl. Response at 25) (ECF26).

matter of law." Fed. R. Civ. P. 56(a).  A dispute is "genuine" if "the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby,

Inc., 477 U.S. 241, 248 (1986).  A factual dispute is "material" if it "might affect the outcome of

the suit under the governing law." Id. at 251.  Under Rule 56, the Court must view the facts and

all reasonable inferences in the light most favorable to the non-moving party, i.e., the Plaintiff.

Id. at 255 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970)).

### III.    Analysis

#### a.  Section 1983 Claim for Excessive Force

Count I in Plaintiff's Complaint seeks relief under 42 U.S.C. § 1983, which provides a

right of action to an individual whose "rights, privileges, or immunities," secured by the

Constitution or laws of the United States, were violated by an official acting under color of law.

Nextel Partners Inc. v. Kingston Twp., 286 F.3d 687, 693-94 (3d Cir. 2002).  Plaintiff contends

Defendants violated his Fourth Amendment rights by submitting him to excessive force when

they tased him on two occasions.  Defendants move for summary judgment because they argue

no constitutional rights were violated; and in the alternative, they argue they are entitled to

qualified immunity.   Additionally, Defendants claim Plaintiff is collaterally estopped from

litigating on these facts.

A plaintiff may prevail on an excessive force claim if he can show that a seizure "was

unreasonable under the circumstances." Lamont v. New Jersey, 637 F.3d 177, 183 (3d Cir.

2011).  The test is one of objective reasonableness – the court must determine whether the

officers used an objectively reasonable degree of force "in light of the facts and circumstances

confronting them, without regard to their underlying intent or motivations." See Kopec v. Tate,

361 F.3d 772, 776 (3d Cir. 2004). In Graham v. Connor, the Supreme Court held that "[d]etermining whether the force used to effect a particular seizure is 'reasonable' . . . requires . . . careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether a suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." 490 U.S. 386, 396 (1989).  "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." Id. at 396-97.

The Third Circuit has directed courts, in conducting an excessive force analysis, to consider factors such as the possibility that the individuals involved were armed or dangerous, the duration of the officer's action, whether the action took place in the context of effecting an arrest, and the number of persons with whom the police officers were contending at one time. Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997), abrogated on other grounds by Curley v. Klem, 499 F.3d 199 (3d Cir. 2007).

Given that determining the reasonableness of a seizure demands such a case-sensitive, fact-specific assessment, it is a determination usually best made by a finder of fact, after an adjudication on the merits.  That said, "'defendants can still win on summary judgment if the district court concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances.'" Kopec, 361 F.3d at 777 (quoting Abraham v. Raso, 183 F.3d 279, 290 (3d Cir. 1999)); Scott v. Henrich, 39 F.3d 912, 915 (9th Cir. 1994)).

The discovery record in this case precludes the Court from granting summary judgment on the issue of whether Defendants used excessive force vis-à-vis Plaintiff because there are genuine disputes regarding how Plaintiff was behaving – after he was arrested but before the first and second tasings – and regarding what degree of force was necessary to subdue him.

As to Plaintiff's conduct before the first tasing, Plaintiff contends he was not acting unruly when he was in the back seat of the cruiser or during Hibson's pat-down. There is evidence in the record to support his account. In addition to Plaintiff's own testimony, the intake photo of Plaintiff from the police station shows no marks or bruises on his face.  (Def. Mot. for Summary Judgment, Ex. P) (ECF 23).  Arguably, if Plaintiff was banging his head against the partition of the cruiser as Defendants claim, there would have been some visual evidence. Defendants, meanwhile, contend Plaintiff was acting belligerent in the backseat of the cruiser, making threats to the officers' safety, and violently resisting during Hibson's pat-down. The Quakertown Resistance Report and the officers' affidavits support Defendants' account. (Def. Motion for Summary Judgment, Exs. L, E, G, & I) (ECF 23).[2]

As to Plaintiff's behavior before the second tasing, there is also a genuine dispute of fact that precludes judgment as a matter of law. Plaintiff contends he was never put in double handcuffs, never maneuvered his hands in front of his body, and never became unruly in the backseat. He also states he was not taken out of the cruiser a second time, but rather was tased within moments of being returned to the cruiser after the PSP pat-down.  (Pl. Response, Garey Dep., Ex. B) (ECF 26).  Defendants offer a wildly different description of events. Citing police

---

[2] While the video taken from the PSP cruiser captured most of the events preceding the first tasing, it does not resolve the factual dispute between the parties.  There is no audio on the video recording, the lighting was dim, and the images are somewhat blurry because the camera was at a considerable distance from the Quakertown cruiser. A reasonable factfinder could watch the video and find it to support either Plaintiff or Defendants' description of events.  (Def. Mot. for Summary Judgment, Ex. I) (ECF 23).

reports and affidavits, they claim Plaintiff became belligerent in the backseat once again, was removed so that ankle restraints could be placed on him, and continued to resist.  (Def. Motion for Summary Judgment, Exs. K & E) (ECF 23).

In sum, the record is replete with factual disputes and viewing them in the light most favorable to Plaintiff, the Court cannot determine whether the officers' conduct was objectively reasonable under the circumstances. A determination of such reasonableness necessitates a trial on the merits, during which there can be live testimony, cross-examination, and credibility determinations. See  Caliguri v. City of Pittsburgh, 2009 WL 1546325, at *1-2 (W.D. Pa. June 2, 2009) (denying summary judgment in a § 1983 case involving a taser gun because "[b]ased on the pleadings and evidence of record . . . the court concludes, as a matter of law, that there remains a genuine dispute over material facts"); Boyd v. Kissinger, 2008 WL 2550584, *6 (E.D. Pa. June 25, 2008) (denying summary judgment in an excessive force claim, arising from the use of a taser, because "in light of plaintiff's allegations, I find material questions exist as to the nature of plaintiff's actions at the scene, whether plaintiff posed an immediate threat to the safety of the officers or others . . . [and] whether plaintiff was acting in a violent or dangerous manner"); DeBellis v. Kulp, 166 F. Supp. 2d 255, 272-74 (E.D. Pa. 2001) (denying summary judgment on an excessive force claim because there were material disputes about the struggle between the plaintiff and the officers).

### b.  Qualified Immunity

Defendants argue that they are entitled to protection via the doctrine of qualified immunity because they did not violate constitutional or statutory law and even if they did, that law was not clearly established at the time of the alleged violation.  The Court declines to grant Defendants summary judgment under the qualified immunity doctrine for the same reason it

declined to grant them summary judgment on the merits – there are material factual disputes about Plaintiff's behavior precipitating the first and second tasings, and Defendants' responses to that behavior, such that the objective reasonableness of Defendants' conduct cannot be determined from the summary judgment record alone.

Qualified immunity is an affirmative defense available to government officials sued in their personal capacities. For qualified immunity to apply, the official must show his or her conduct was objectively reasonable. Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982). There are two components of this inquiry: first, whether the plaintiff's constitutional or statutory rights were in fact violated; second, whether it would have been clear to a reasonable officer that the conduct was unlawful in light of "clearly established" law. Pearson v. Callahan, 555 U.S. 223, 232 (2009). If an official can show that at least one of the components of the above test has not been met, he or she will be entitled to immunity. Id. at 236.

Here, given the factual disputes about Plaintiff's conduct before the first and second tasings, and viewing those disputes in the light most favorable to Plaintiff, the Court cannot conclude the officers' conduct was, in fact, consistent with the Fourth Amendment, or that they acted lawfully in light of clearly established law. The availability of the qualified immunity defense must be determined by a finder of fact after a trial on the merits. Shultz v. Carlisle Police Dep't, 706 F.Supp.2d 613, 624 (M.D. Pa. 2010) (denying summary judgment to officers under the qualified immunity doctrine because there was sufficient evidence from which a jury could conclude that a "reasonable officer under the circumstances would know that the use of physical force that included repeatedly tasering a subject who had already been subdued and did not pose any threat violated the plaintiff's rights"); Wilhere v. Delaware Cnty., 2010 WL 1381664, at *7 (E.D. Pa. Apr. 1, 2010) (holding "the court cannot rule on defendant's qualified

10

immunity defense at this time" because "there are several disputed material facts central to whether the use of force [in the use of a taser gun] was reasonable," such as whether the plaintiff actively resisted arrest and "the level and detail of each deputies' participation in the 'struggle' surrounding the tasering"); Reynolds v. Smythe, 418 F. Supp. 2d 724, 735 (E.D. Pa. 2006) ("The Court is unable to reach a conclusion [] because plaintiff and defendants vigorously contest how the May 26, 2002 incident occurred. . . . The conflicting evidence certainly raises genuine issues of material fact. The appropriate fact finder in this situation is the jury. Thus, the Court denies the police officers' motion for qualified immunity.").

> ### c.  Collateral Esttoppel

Defendants contend Plaintiff is collaterally estopped from bringing a lawsuit under Section 1983 premised on an allegation of excessive force, given that Plaintiff pled guilty to resisting arrest in Pennsylvania state court.  (See Def. Motion for Summary Judgment, Exs. D & M).  The Court rejects this claim.

Under Heck v. Humphrey, a plaintiff may not recover damages under Section 1983 if doing so would "necessarily imply the invalidity of [a prior] conviction or sentence."  512 U.S. 477, 487 (1994).  However, the Third Circuit has made clear that Heck does not summarily block a plaintiff from bringing an excessive force claim when he has been convicted of resisting arrest. Nelson v. Jashurek, 109 F.3d 142, 145-146 (3d Cir. 1997).  In such situations, a plaintiff's recovery in the Section 1983 suit would "not necessarily imply the invalidity" of his prior conviction because while resisting arrest invites some force by an officer, it does not invite excessive or unreasonable force.  Id. at 145.  "[A] reasonable juror, considering the totality of circumstances, could find that the arrestee resisted arrested, but was still subjected to an unreasonable excessive level of force by the police officer in question." Garrison v. Porch, 367

11

Fed. App'x 274, 278 (3d Cir. 2010).  The plaintiff is afforded an opportunity to prove that the degree of force used by the officer exceeded that which was invited by his resistance.    See Owens v. City of Atlantic City, 2008 WL 4205797, at *4 (D.N.J. Sept. 8, 2008) ("By his guilty plea, plaintiff has admitted that he used physical force or violence against Miller to purposefully prevent his arrest. Even with that admission, however, it could still be found that Miller used even more force – i.e., excessive and unreasonable force – in effecting plaintiff's arrest than plaintiff used in resisting arrest." (internal citation omitted)).

In particular, when a plaintiff's Section 1983 claim is premised on force used against him *after* he had been subdued and placed under arrest, the fact of his conviction for resisting arrest should have no collateral estoppel effect.  See Hurt v. City of Atlantic City, 2010 WL 703193, * 5, *5 (D.N.J. Feb. 24, 2010) ("[P]laintiff has offered evidence that the defendant officers used excessive force *after* Plaintiff assaulted Officer Timek, *after* Plaintiff resisted arrest, and most importantly *after* Officer Timek and Officer Warner successfully subdued and handcuffed Plaintiff on the ground. Plaintiff could consequently succeed in the present action without threatening the validity of his assault conviction, because 'the factual basis for the conviction is temporally and conceptually distinct from the excessive force claim.'").

Here, Plaintiff pled guilty to resisting arrest. Under Pennsylvania law, that crime is defined as "employ[ing] means justifying or requiring substantial force to overcome the resistance." 18 Pa. C.S.A. § 5104.  The Criminal Complaint referenced by the prosecutor at Plaintiff's plea hearing (see Def. Mot. Summary Judgment, Ex. D at 13) alleged that "Defendant, with intent of preventing a public servant . . . from effecting a lawful arrest . . . did employ means justifying or requiring substantial force to overcome the resistance." (Def. Mot. Summary Judgment, Ex. M at 5) (ECF 23). Meanwhile, at the plea hearing, the presiding judge did not

mention the resisting arrest charge or make any factual findings as to that charge. (Def. Mot. Summary Judgment, Ex. D at 7-8 (describing the charges for attempted burglary, aggravated assault, and carrying of a firearm without a license, and stating "I think those are the charges that you're likely to be sentenced on")) (ECF 23).  Altogether, there is nothing in the Pennsylvania statute, the Criminal Complaint used by the prosecution, or the record from the plea hearing, to demonstrate that Plaintiff's conviction for resisting arrest or the facts underlying the conviction preclude a finding that Defendants' use of force, when they tasered Plaintiff on two occasions *after* he was placed in handcuffs, was unreasonable. Plaintiff's conviction for resisting arrest does not preclude him from bringing the excessive force claim alleged here.[3]

### d.  Assault and Battery

Finally, Defendants request summary judgment on Plaintiff's state law claims of assault and battery, alleged in Count II of the Complaint.  Under Pennsylvania law, "[a]ssault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever small a degree, upon the person." Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994) (internal citation

---

[3]  In their Reply Brief, Defendants attach a second Criminal Complaint in addition to the one they attached to their Motion for Summary Judgment, this one having been prepared by Trooper Hickman. It states: "Defendant with intent of preventing a public service . . .  from effectuating a lawful arrest/discharging a duty, namely, drive stunning with a taser to the defendant two (2) times, did employ means justifying or requiring substantial for to overcome the resistance." (Def. Reply, Ex. C) (ECF 28).  This document does not change the Court's Heck analysis.  First, there is no evidence the Hickman Complaint was relied on by the presiding judge in arriving at Plaintiff's conviction for resisting arrest. During the plea hearing, the prosecutor referred to "the probable cause affidavit prepared by Trooper Stumpo and McGuire" (see Def. Mot. Summary Judgment, Ex. D at 13) (ECF 23), which is the same document attached to Defendant's Motion for Summary Judgment as "Exhibit M." The Stumpo/McGuire Complaint is what appears to have provided the factual basis for Plaintiff's conviction, and that complaint did not mention any taser incidents.  See supra text.  Second, even if the Hickman Complaint did supply the facts underlying Plaintiff's conviction, it would not collaterally estop him from bringing a claim for excessive force. The Hickman Complaint alleged that Plaintiff resisted arrest and invited "drive stunning with a taser . . . two (2) times." (Def. Reply, Ex. C). There is no specification that the tasings occurred *after* Plaintiff was placed in handcuffs, which is what he complains of in his damages suit.  The "drive stunning" to which the Hickman Complaint refers could have occurred as Plaintiff was being apprehended, rather than after he was placed in handcuffs or in the Quakertown cruiser. The factual basis underlying his conviction would be temporally distinct from the facts necessary to support his damages claim.

omitted). The question of whether an officer is liable for assault and battery under Pennsylvania law turns on whether he or she has used an excessive degree of force, as a matter of Fourth Amendment law, in dealing with an arrestee. <u>Russoli v. Salisbury Twp.</u>, 126 F. Supp. 2d 821, 870 (E.D. Pa. 2000) ("The reasonableness of the force determines whether the police officer's conduct constitutes an assault and battery." (internal citation omitted)). As discussed above, there are genuine disputes of material fact regarding whether Defendants' use of force vis-à-vis Plaintiff was reasonable. Accordingly, the Court denies summary judgment to Defendants on Plaintiff's state law claims.

## IV. Conclusion

After reviewing the record and viewing the disputed facts in the light most favorable of the Plaintiff, the Court determines Plaintiff has established genuine issues of material fact and Defendants are not entitled to judgment as a matter of law. An appropriate Order follows.

O:\SARA\GAREY V. QUAKERTOWN\MEMORANDUM OF LAW.DOCX